UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AMTAX HOLDINGS 303, LLC                          CIVIL ACTION

VERSUS                                           NO: 06-2499

PHASE I MANAGEMENT, LLC                          SECTION: "T" (4)

<u>ORDER AND REASONS</u>

Before the Court is a Motion for Summary Judgment filed by Defendants, Phase I Management, LLC, and Phase II Management, LLC. Rec. Doc. 84. Plaintiffs filed an Opposition. Rec. Doc. 113. The Motion came for hearing without oral argument on October 17, 2007, and was submitted on the briefs. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

I.      BACKGROUND

This action arises out of the development and construction of a residential housing subdivision in Waggaman, Louisiana. Plaintiffs, AMTAX Holdings 303, LLC and AMTAX Holdings, 430, LLC (collectively, "Amtax") filed this action against Phase I Management, LLC and Phase II Management, LLC alleging that these Defendants breached two limited partnership agreements which partnerships were created for the purpose of developing the subdivision. Rec. Doc. 1. The developments consist of one-hundred-twenty improved residential lots, divided into two phases, with sixty lots in Phase I and sixty lots in Phase II (hereinafter, "Live Oak Manor"). The development of Live Oak Manor included construction of a single family residence on each lot and the installation of the necessary subdivision infrastructure including streets, sidewalks, sewage, water, utilities, and drainage.

Amtax 303, LLC, is the Investor Limited Partner in the Live Oak Manor Limited Partnership,

a Louisiana Limited Partnership in Commendam.  Phase I Management, LLC (hereinafter, "Phase I") was the Managing General Partner of this partnership.  Rec. Doc. 1 at paragraph 9.  Amtax 430, LLC is the Investor Limited Partner in the Live Pak Manor Subdivision Phase II, Limited Partnership, a Mississippi Limited Partnership, and Phase II Management, LLC (hereinafter, "Phase II") was the Managing General Partner of that partnership.  Rec. Doc. 1 at paragraph 11.

The Complaint alleges that Phase I and Phase II, as the General Managing Partners and in accordance with the respective agreements, assumed responsibility to develop, repair, improve, maintain, operate, and lease the Live Oak Manor Project which responsibility included obtaining loans to finance the construction of the Live Oak Manor Project in exchange for a percent ownership interest in the project, development fees and other residuals.  Rec. Doc. 1 at paragraph 14.  Plaintiffs allege Phase I and Phase II breached the partnership agreements as well as their fiduciary responsibility owed to the Plaintiffs.  Plaintiffs allege that issues first arose with Phase I and Phase II's communications with Plaintiffs during construction in that Phase I and II: (1) "provided little information to Plaintiffs...on the progress of construction;" (2) failed to ensure that Kenco, LLC (the general contractor), paid its subcontractors; (3) failed to notify Plaintiff that one of the subcontractors filed suit against the partnership to recover amounts owed for work; and (4) failed to timely notify Plaintiffs that Kenco, LLC, and its principal, filed for bankruptcy and failed to assert or preserve the partnerships' rights and claims in these bankruptcies amid allegations that Kenco, LLC, and its principal converted monies slated for subcontractor payments and used the partnerships' funds to complete other unrelated projects.  Rec. Doc. 1 at paragraphs 21-23.  Additionally, Plaintiffs allege that Phase I and Phase II permitted the construction loans to go into default, obtained two construction loans and depleted both, yet only 65% of the project was

2

completed. Rec. Doc. 1 at paragraph 25. In addition, Plaintiffs allege that Phase I and Phase II did not timely complete the Live Oak Manor Project resulting in the loss of the federal tax credits; failed to use reasonable efforts consistent with sound management practice to timely complete and maximize income from the project and used partnership funds in the form of construction loan draws in a manner that was not for the exclusive benefit of the partnership. Rec. Doc. 1 at paragraphs 25-28. Finally, Plaintiffs allege the that Phase I and Phase II failed to enforce the construction contract for the benefit of the partnerships and that their actions and omissions caused warranty defaults. Rec. Doc. 1 at paragraphs 29-30.

On March 6, 2006, Amtax notified Phase I and Phase II that it was "exercising [their] unilateral right pursuant to Section 4.5(A)(iv) of the Partnership Agreement[s] to remove" Phase I and Phase II as Managing General Partners effective as of the time set forth in the letters. *See* Exhibit "A" attached to Rec. Doc. 100. The March 6, 2006, letters to Phase I and Phase II set forth the grounds and authority for removal and further informed Phase I and Phase II that their removal constituted a Terminating Event under the Partnership Agreements such that Amtax would designate successor Managing General Partners. *See* Exhibit "A" attached to Rec, Doc. 100.

On April 18, 2006, Amtax notified Phase I and Phase II via letters that successor Managing General Partners, namely Gozone, LLC, had been designated effective April 13, 2006. *See* Exhibit "B" attached to Rec. Doc. 100.

On May 12, 2006, this action ensued against Phase I and Phase II. Plaintiffs Amended their Complaint adding Defendants, Dale Lancaster and William P. Joseph, and allege that these individuals were guarantors for the respective partnerships and therefore, are liable for the monetary damages resulting from the alleged acts and omissions of Phase I and Phase II. Amtax also seeks

a judicial declaration finding that neither of these individuals has any authority to hold themselves out to third-parties as the Managing General Partners of the respective partnerships or the agents of the Managing General Partners of the respective partnerships.  Rec. Doc. 3 at paragraphs 12, 15.

Phase I and Phase II answered the Original and Amended Complaints denying all allegations and further, brought Cross-Claims and Third-Party Demands against a number of entities and persons involved with the Live Oak Manor Project.  Motions to Dismiss followed as well as the instant Summary Judgment Motion by Phase I and Phase II.

By the instant Motion, Phase I and Phase II request that they be granted Partial Summary Judgment finding that no "terminating event" as defined in the respective partnership agreements occurred and therefore, Amtax did not have authority to replace them as the General Managing Partners of the partnerships.  Rec. Doc. 84 at p. 7.  Amtax responded and argues that the definition of "terminating event" has no bearing on Amtax's legal ability or factual basis to remove Phase I and Phase II as Managing General Partners because the removal provisions in the respective partnership agreements govern removal of Managing General Partners.  Rec. Doc. 100 at p. 2.  Accordingly, Amtax urges that Phase I and Phase II have failed to demonstrate, under their interpretation of the partnership agreements, that they are entitled to Judgment as a matter of law; therefore, Amtax requests that the Motion be denied.  Rec. Doc. 100 at p. 2.  Additionally, Amtax argues that counsel for Phase I and Phase II should be sanctioned under FRCP 11 for failing to cite legal authority in support of its arguments violating Local Rule 7.4 and for their lack of candor with the Court.  Rec. Doc. 100 at p. 2.

## II.    LAW AND ANALYSIS

Summary judgment should be granted only "if the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir. 1996) *citing, Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 912-13 (5th Cir.).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  *See cause Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).  Rather, the non-movant must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  *Id.*  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255.

"Terminating Event" is described in the respective partnership agreements as follows:

> "Terminating Event." The death or permanent disability of, or an adjudication of insanity or incompetence as to an individual General Partner (unless the Consent of the Investor Limited Partner to a substitute General Partner is received, and such substitute General Partner is admitted to the Partnership by the first to occur of (i) the sixtieth day following such event or (ii) such earlier date as is necessary to prevent a dissolution of the Partnership under the Act), an Event of Bankruptcy as to or dissolution of a General Partner, the Transfer of its Partnership Interest by a General Partner, removal of a General Partner, or the voluntary or involuntary withdrawal of a General Partner from the Partnership. For purpose of the foregoing, an individual General Partner shall be deemed to be permanently

> disabled if he or she becomes disabled during the term of this Agreement through any illness, injury, accident or condition of either a physical or psychological nature and, as a result, is unable to perform substantially all of his or her duties and responsibilities hereunder for 120 days during any period of 365 consecutive calendar days. Involuntary withdrawal shall occur whenever a General Partner may no longer continue as a General Partner by law or pursuant to any terms of this Agreement. In the case of a General Partner which is an Entity, a Transfer of a majority of the voting stock (or other beneficial interest) of the General Partner to a Person who is not an Affiliate of the General Partner shall be deemed to be a Transfer by the General Partner of its Partnership Interest.

*See* Exhibit "C" attached to Rec. Doc. 84 and Exhibit "C" attached to Rec. Doc. 100.

Phase I and Phase II first argue that summary judgment should be granted because the definition of "terminating event" requires that the general partner die, is permanently disabled or is adjudicated insane.  Rec. Doc. 84.  Because none of these events occurred, Phase I and Phase II argue a "terminating event" did not take place and therefore, Amtax did not have authority to remove Phase I and Phase II and appoint Gozone, LLC.  Rec. Doc. 84 at p. 3.  In support, Phase I and Phase II attach the Affidavit of Victor Loraso, Jr. (the Managing General Partner of Phase I and Phase II) attesting that neither he or Phase I and Phase II are dead, permanently disabled or insane. *See* Exhibit "D" attached to Rec. Doc. 84.

Phase I and Phase II's first argument is without merit.  The portion of the definition of "terminating event" relied upon by Phase I and Phase II applies to "an individual General Partner" only.  The Managing General Partners under the Partnership Agreements are limited liability companies (i.e. Phase I and Phase II) and not individuals and therefore, Phase I and Phase II's arguments that they are not dead, insane, etc. has no bearing on whether a "terminating event" occurred because that section of the definition applies to an "individual."

Alternatively, if it is Phase I and Phase II's argument that Victor Loraso, II, as opposed to

6

Phase I and Phase II, was the Managing General Partner at the time the removal actions by Amtax occurred, then an issue of fact precludes summary judgment, namely who was the Managing General Partner at the time of the removal, as Amtax argues that it was Phase I and Phase II that were the Managing General Partners at that time.

In addition, "terminating event," when not applied solely to an individual General Partner, also means the "removal of a General Partner" or the "voluntary or involuntary withdrawal of a General Partner from the Partnership." *See* Exhibit "C" attached to Rec. Doc. 84 and Exhibit "C" attached to Rec. Doc. 100. Accordingly, Phase I and Phase II's argument that removal is not a "terminating event" under the definition in the respective agreements is equally meritless.

Next, Phase I and Phase II argue that their removal by Amtax was not authorized by the respective agreements. Specifically, Phase I and Phase II argue that none of the reasons listed in the Amtax's March 2006, letters qualify as a "terminating event" and further, the provisions of the agreement relied upon by Amtax do not give Amtax any authority or extend the term "terminating event." Rec. Doc. 84 at pp. 4-5. Further, Phase I and Phase II argue that Amtax needed approval of the General Partner pursuant to section 4.5(A)(i)(b) prior to removing Phase I and Phase II and finally, Phase I and Phase II argue that Amtax never paid Phase I and Phase II the fair market value of the its partnership interests as required by Section 8.4. Rec. Doc. 84 at pp. 6-7.

Phase I and Phase II's argument that Amtax's removal of them as the Managing General Partner did not constitute a "terminating event" as a matter of law is not supported by the text of the agreements. As stated *supra*, "terminating event" is defined as, *inter alia*, the removal of a General Partner. *See* Exhibit "C" attached to Rec. Doc. 84. Section 4.5(A) of the agreements provides:

<u>Certain Rights of Investor Limited Partner</u>

A. Subject to the provisions hereinafter set forth in this Section 4.5, and to the Regulations, in addition to the other rights provided for in this Agreement, the Investor Limited Partner shall have the right:

(i) to amend this Agreement, subject to the provisions of Section 13.9; provided that such amendment (a) shall not in any manner allow the Limited Partners to take any action which would constitute their taking part in the control of the Partnership's business within the meaning of the law, and (b) shall not, without the consent of Special I Limited Partner and General Partner affected, except in the case of removal pursuant to Section 4.5(iii), alter the rights, powers, obligations or duties of the affected General Partner or its interest in the Profits and Losses of the Partnership, Tax Credits or distributions or alter any the provisions of Section 4.5B;
...

(iv) to remove any or all of the General Partners and elect one or more new General Partners in the event of any misconduct or failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner, or upon the occurrence of any of the following:

(1) the General Partner shall have violated any material provisions of the Investment Agreement, Construction Loan Agreement and/or the Loan Agreement and/or the Extended Use Agreement, or any material provisions of any other Project Document or other document required in connection with the Construction Loan or the Mortgage Loan, or any provisions of the Lender and/or Agency regulations applicable to the Apartment Complex;

(2) the General Partners, or any of them shall have violated any rights, powers, duties, representations or warranties as set forth in Article VII herein or shall have violated any material provision of this Agreement, defaulted on a guarantee herein or the timely payment of an adjustment payment or violated any material provision of applicable law and fail to cure such event within thirty (30) days thereof;

(3) the General Partners, or any of them, shall have caused the Construction Loan or the Permanent Mortgage Loan to go into default and such default is not cured within the cure period and only prior to the initiation of any action or proceeding for foreclosure; or

(4) the General Partners, or any of them, shall have conducted their

8

own affairs or the affairs of the Partnership in such manner as would cause the termination of the Partnership for federal income tax purposes; or cause the Partnership to be treated for federal income tax purposes as an association, taxable as a corporation; or shall have effected a Change of Control without the consent of the Investment General Partner; or

(5) failure of the Project to maintain a Debt Coverage Ratio of at least 1.05 for any successive six (6) month period; or

(6) failure to furnish reports to the Investor Limited Partner as required by Section 12.1 or to provide for Project expenses as required by Section 7.9; or

(7) any penalty assessed or payment required to be made to the Investor Limited Partner, is not paid within thirty (30) days; or

(8) after the first nine (9) months of operations, the occupancy of the Project for any three (3) consecutive months or the average occupancy for any year, falls below 85% unless such reduced occupancy is solely due to fire damage (repaired within a reasonable time) or other such catastrophes totally beyond the control of the Managing General Partner; or

(9) the total number of occupied Federal Housing Tax Credit qualified unites of the Project falls below ninety percent (90%) of total occupancy for any period.

*See* Exhibit "C" attached to Rec. Doc. 84 and Rec. Doc. 100.

In accordance with Section 4.5(A)(iv), Amtax forwarded to Phase I and Phase II correspondence indicating that it was removing those entities from the General Managing Partner positions because they had committed one or more of the acts described in subsections 4.5(A)(iv)(1)-(9). *See* Exhibit "A" attached to Rec. Doc. 100. Phase I and Phase II argue that Section 4.5(A)(i)(b) prohibits Amtax from taking the actions described unless it has the consent of the Special I Limited Partner and the General Partner. Rec. Doc. 84 at p. 5. However, Phase I and Phase II's reading of Section 4.5 is incorrect as Section 4.5(A) lists actions (i) through (iv) which are separate and

dependant actions that Amtax as the Investor Limited Partner can take.  Sub-section (iv), the one which Amtax invoked for the removal of Phase I and Phase II, do not require authority or consent of any other party.  *See* Exhibit "D" attached to Rec. Doc. 100.  Whether or not Phase I and Phase II actually committed any misconduct or failed to exercise reasonable care to any matter in its discharge, and therefore, whether Amtax was justified in invoking and triggering Section 4.5(A)(iv) (1) through (9) are fact issues that are not before the Court as this time.  The only issue before the Court is whether or not there is a genuine issue of fact that a "terminating event" occurred as a matter of law.  "Terminating event" is defined, *inter alia*, as the removal of a General Partner. Pursuant to Section 4.5, Amtax removed Phase I and Phase II for allegedly acting as described in Subsection 4.5A (iv)(1) through (9).  Therefore, Phase I and Phase II's Motion for Summary Judgment requesting that the Court are find that no "terminating event" occurred as a matter of law is **DENIED**.

Regarding Amtax's request for Rule 11 Sanctions, this Court has considerable discretion in determining whether or not Rule 11 sanctions should be imposed.  After reviewing the memoranda of the parties and the arguments raised, the Court finds that sanctions are not appropriate and therefore, Amtax's request for FRCP 11 Sanctions is **DENIED.**

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendants', Phase I Management, LLC and Phase II Management, LLC (Rec. Doc. 84) is **DENIED.**

**IT IS FURTHER ORDERED** that Amtax's request for sanctions is **DENIED.**

New Orleans, Louisiana, this 20th day of March, 2008.

 

 

_____

**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**

11