# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMTAX HOLDINGS 303, LLC, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:       06-2499** |
| **PHASE I MANAGEMENT, L.L.C., ET AL** | **SECTION: "I" (4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Enforce Settlement (R. Doc. 154),** filed by the movant, Victor Loraso ("Loraso") seeking an Order from this Court to enforce the settlement agreement entered into by the parties in this case on August 8, 2008. *See* R. Doc. 154, p. 1. The motion is opposed. *See* R. Doc. 162. A reply was also filed. *See* R. Doc. 169.

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**, on April 15, 2014,[1] and was originally scheduled to be heard by oral argument on May 7, 2014, but continued and heard by oral argument on Wednesday, June 25, 2014. *See* R. Docs. 166, 170.

## I.    Background

Plaintiffs, AMTAX Holdings 303, LLC and AMTAX Holdings 430, LLC instituted this action on May 12, 2006, seeking a declaratory judgment and damages arising out of the alleged breach of the Partnership Agreements and fiduciary duties owed by Defendants, Phase I

---

[1] *See* R. Doc. 161.

Management, LLC, (hereinafter, "Phase I") and Phase II Management, LLC, (hereinafter, "Phase II") who were the managing general partners of the partnerships created to develop and construct a residential housing subdivision in Waggaman, Louisiana. *See e.g.,* R. Doc. 120, p. 1.

Plaintiffs, AMTAX Holdings 303, LLC and AMTAX Holdings 430, LLC ("Amtax 303") and ("Amtax 430") allegedly contributed capital to the subdivision project and were limited partners in the two (2) partnerships constructing the subdivision. *Id.* The first partnership was created in 2002, "Live Oak Manor Limited Partnership I" ("Like Oak I"), between Loraso, Phase I, Dave Lancaster ("Lancaster") and later Amtax 303. *See* R. Doc. 154, p. 1. The second partnership was created in 2003, Live Oak Manor Subdivision Phase II, L.P., a Mississippi Limited Partnership ("Live Oak II"), between Loraso, Phase II, Lancaster, and in December 2003, Amtax 430. *See* R. Doc. 154, p. 1-2.

The General Partners of these projects, Phase I and Phase II, retained Kenco, L.L.C., to be the contractor of the subdivision in 2003. *Id.* at 2. After construction was halted, due to the depletion of capital funds from the construction loans and investor capital, Kenco, Phase I and Phase II, were sued by the subcontractor, All American Builders, Inc. Shortly thereafter, Kenco filed for bankrupty. *Id.* As such, Amtax 303 and Amtax 430 designated Gozone, L.L.C. ("Gozone") an LLC of which Murray Calhoun is the sole member and manager, to replace Phase I and Phase II as general partners. *Id.* at 2. On May 12, 2006, Amtax 303 and Amtax 430 instituted the instant action in this Court. *Id*. On March 20, 2008, Live Oak I, Live Oak II and Gozone were dismissed from the action.

As to the instant motion, Loraso contends that on August 8, 2008, he, Live Oak I, Live Oak II, Phase I, Phase II, Amtax 303, Amtax 430, Gozone, Calhoun and others entered into a Settlement Agreement, and both the federal and state actions were dismissed. Loraso contends that the

settlement agreement provided that if Gozone received any net cash flow, sale or financing proceeds, he would pay Loraso thirty-five (35) percent of such proceeds within thirty (30) days of receipt, with precedence to be paid before any deferred developer fees. *See* R. Doc. 154, p. 3-4.

Loraso contends that he believes he has not been paid monies owed to him by Gozone, which is in violation of the Settlement Agreement entered into by the parties. Thus, Loraso contends that he sent a demand letter to Gozone and Calhoun, demanding monies owed to him under the settlement agreement as well as to see the books, records and tax returns of Gozone and Mac-Re, LLC., a limited liability company which was allegedly used by Calhoun to manage the Live Oak subdivision project. *See* R. Doc. 154, p. 5. However, Loraso contends that his request was denied.

In support of his allegations, Loraso contends that he believes that Gozone "may have received proceeds," which are owed to him under the settlement agreement, but failed to pay him. *Id.* at 4. Loraso contends that as to Live Oak I, during 2008-2010, $414,604 of deferred developer fees, $340,000 in long-term liabilities, and $100,000 in cash were received, as evidenced by tax returns, but was not paid. *Id.* at 6-7. As to Live Oak II, Loraso contends that its 2008-2009 tax returns showed an increase in long-term and other liabilities of $1.4 million, and that $253,124 of "deferred developer fees" were paid, even though he was not. Loraso also contends that in October 2010, Calhoun allegedly sold his partnership interest in Live Oak II to Amtax 430 for approximately $2,336,244. However, Loraso contends that he was never paid any monies on this sale. *Id*. at 8.

As such, Loraso has filed the instant motion seeking an Order from this Court to enforce the terms of the settlement agreement, and requiring the tax returns, financial statements, books and

records of Gozone, Live Oak I, Live Oak II, Phase I, Phase II, Mac-Re and Calhoun be produced,[2] as well as for an Order directing Calhoun to pay him thirty-five percent (35%) of all net cash flow, sale and financing proceeds received in accordance with the Live Oak subdivision project. *Id.* at 9.

## II.     Standard of Review

Federal law determines whether a settlement agreement is valid "where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389 (5th Cir.1984). Under federal law, settlement agreements are contracts. *Guidry v. Halliburton Geographical Services, Inc.,* 976 F.2d 938, 940 (5th Cir.1992). A binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance. *See Courtney v. Andersen,* 264 F. App'x 426, 430 (5th Cir. Feb.1, 2008); *Lopez v. Kempthorne,* 2010 WL 4639046, *4 (S.D.Tex. Nov.5, 2010) (citing *Triche v. Louisiana Ins. Guaranty Assoc.,* 2010 WL 891000, *5 (E.D.La. Mar.5, 2010); *Turner Marine Fleeting, Inc. v. Quality Fab and Mechanical, Inc.,* 2002 WL 31819199, *4 (E.D.La. Dec.13, 2002)). "If a party to a [federal] suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement." *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981).

## III.    Analysis

Loraso's motion presents a convoluted argument that he believes that Gozone may have received proceeds owed to him in accordance with the Settlement Agreement, but diverted the proceeds to other entities owned by its manager, Calhoun, without first paying him, in violation of

---

[2]This way he may determine the true net incomes and expenses of the Live Oak subdivision project, as well as the true net cash flows and whether there has been any sales or financing proceeds paid to Calhoun or entities owned or controlled by him that should have been paid in part to Loraso.

the Settlement Agreement. *See* R. Doc. 154, p. 3-4. Thus, Loraso has filed the instant motion seeking an Order from this Court to enforce the terms of the settlement agreement, and require Gozone, Live Oak I, Live Oak II, Phase I, Phase II, Mac-Re and Calhoun to produce their tax returns, financial statements, books and records. *Id.* at 9. Loraso further contends that despite the settlement of this matter some six years earlier, the Court retains jurisdiction to enforce the settlement agreement because the parties consented to it in the settlement agreement. *See* R. Doc. 169, p. 4; *see e.g., Admin. Of the Tulane Educ. Fund v. Biomeasure, Inc.,* 2011 WL 3268108 (E.D.La. 2011) (where parties who were dismissed from the suit were allowed to have settlement-related claims brought against them even after defendants' objected based on lack of personal jurisdiction).

In opposition, Gozone, the General Partner of Live Oak I and Live Oak II, Mac-Re, LLC., and Calhoun as manager of both Like Oak I, II, and Mac-Re, ("Gozone, et al.") contends that Loraso's motion should be denied because this Court not only lacks subject matter jurisdiction to enforce the Settlement Agreement, because the Court's retention of jurisdiction has since lapsed; but also because this Court lacks jurisdiction over Gozone, as it was dismissed from this action prior to the Court's entry of Partial Order of Dismissal. *See* R. Doc. 162, p. 2, 5, 13-14; citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994). *See also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187-88 (3rd Cir. 1996). Gozone also contends that this Court lacks personal jurisdiction over Calhoun and Mac-Re, because none of these entities were ever parties to this action or the settlement agreement. *See* R. Doc. 162, p. 11-13.

In the alternative, Gozone et al., contends that even if this Court were to find that it had jurisdiction to enforce the settlement agreement, the Court should deny Loraso's motion because Calhoun has not breached any part of the agreement with respect to his obligation to pay Loraso. It

contends that it has not received any net cash flow, sale or refinancing proceeds following the Settlement Agreement, and therefore it does not owe Loraso any monies, nor permit him to conduct a "fishing expedition" of their financial books. *See* R. Doc. 162, p. 20.

During oral argument, counsel for Loraso revealed that he filed a motion to enforce the settlement agreement to actually conduct discovery of the financial information of Gozone; Mac-Re, a non-party to the settlement agreement that is the entity managing the funds of Gozone; Calhoun, a party to the settlement agreement, who is the sole partner of Gozone, who would have reported any monies earned on his tax returns; Lymac, L.L.C. ("Lymac") a non-party limited liability company to the settlement agreement that Calhoun owned that was allegedly paid developer fees; and Live Oak I and II, parties to the settlement agreement; to determine whether or not there was net cash flow, or if developer fees were paid before Loraso. Counsel for Loraso argued that discovery of this information is necessary for his client to determine whether any distributions were made and not paid to Loraso, in violation of the Settlement Agreement.

Gozone argued that not only had there been no cash flow, but he also argued that Loraso's interpretation of the settlement agreement was somewhat skewed, as Article III, which read in pertinent part that "in the event Gozone receives any net cash flow or sale financing proceeds, pursuant to the provisions of Section 11.01(a)(ix) or Section 11.04(a)(vii) . . . Gozone agrees to pay Loraso the sum of thirty-five (35%) percent of such proceeds . . .[.] These payments to Loraso will have precedence over and be paid to him before any developer fees are paid." *See* R. Doc. 154-4, p. 5. Corresponding to Article III, Section 11.01(a) creates a prioritized list of how any net cash flow proceeds were to be paid, and 11.01(a)(ix) provides that proceeds would only be paid to Loraso, the general partner, if proceeds remained after all eight other categories were paid. *See* R. Doc. 162-10,

p. 8. Similarly, Section 11.04(a)(viii) provides a similar waterfall provision for the distribution of sale proceeds of partnership property and the refinancing of a project loan, states that if proceeds remain after all seven subcategories before (viii) were paid, 80% of the proceeds would trickle to Loraso, the general partner. Thus, counsel for Gozone contends that because the general partnership provision of the agreement which Loraso argues entitles him to proceeds is at the bottom of this prioritized list and no monies were paid, Loraso is not entitled to any portion and / or distribution.

According to Gozone a permit loan was obtained by it in 2010, but that the proceeds of this loan went to pay off existing construction loans, and paid developer fees to Lymac. Because no payments were made to Gozone, counsel for Gozone argues that none of the developer fees paid to Lymac triggered the waterfall provision of Section 11.04, which would have entitled Loraso to a portion of the proceeds. Furthermore, because Lymac is not a party to this agreement, counsel for Gozone argues that Loraso's request to discover its financial information to determine whether or not there has been a <u>potential</u> breach of the settlement agreement is not what is contemplated by Article III or Section 11.01, 11.04, and is not relevant to this action.

Loraso contends that Article III provides that he is entitled to compensation prior to any developer fees being paid. Counsel for Loraso circularly argues that his client may have been entitled to a net cash flow of proceeds had the developer fees not been paid to Lymac, which was confirmed in Gozone's opposition memorandum. Loraso argues that Calhoun signed the settlement agreement as the sole member of Gozone, as the sole member of the management company Mac-Re, and as the sole member of Lymac. Therefore, Gozone contends that as the sole member of each of these entities, Calhoun and Gozone should have known that the payment of developer fees should not have been made before any net cash flow was received. Therefore, counsel for Loraso contends

that because no financial reports have been produced, he cannot establish whether or not payment should have been made to his client.

After considering the arguments of the parties, as well as the 2008 tax returns of Live Oak I, which evidenced that approximately $414,000 in developer fees were paid, the Court ordered Gozone to supplement the record with proof that the checks paid in developer fees, were in fact paid to Lymac from Live Oak I, and were not paid to Gozone, which could have resulted in net cash flow and potentially a breach of the settlement agreement.

On June 26, 2014, counsel for Gozone provided documentation evidencing the payment of developer fees from LOM I and LOM II to Lymac. The first set of check receipts provided that payments in 2008 were in fact made by LOM I to Lymac in the amounts of $103,515.00, and $311,087.00. The second set of check receipt and bank statements evidenced that in 2008 and 2009, LOM II paid Lymac $84,375.00, via check, and $266,529.83, via bank transfer for developer fees.

After reviewing the bank statements and check receipts in conjunction with the Settlement Agreement, the Court finds that because developer fees were paid to Lymac, who was not a party to this agreement, Loraso has not established why discovery of a non-party's financial information is relevant. The settlement agreement waterfall provision references monies paid to Loraso in advance of developer fees being paid from net cash flow of Gozone, not Lymac, a separate legal entity. Thus, the Court finds that the accounting which Loraso seeks should be denied.

**IV.** **Recommendation**

**IT IS RECOMMENDED** that movant, Victor Loraso's **Motion to Enforce Settlement (R. Doc. 154)** motion be **DENIED.**

A party's failure to file written objections to the proposed findings, conclusions, and

8

recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 16th day of July, 2014

**KAREN WELLS RØBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.